# NO. 25-3164

# In the
# United States Court of Appeals
# for the Seventh Circuit

SHANNON GOLAT,

*Plaintiff-Appellant,*

v.

WISCONSIN STATE COURT SYSTEM, et al.,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
Case No. 3:23-cv-00719-jdp
The Honorable Judge James D. Peterson

## REPLY BRIEF FOR SHANNON GOLAT AS APPELLANT

Adam J. Almen
HELLMUTH & JOHNSON, PLLC
8050 West 78th Street
Edina, Minnesota  55439
(952) 941-4005

Joshua L. Kaul
ATTORNEY GENERAL OF
WISCONSIN
Steven C. Kilpatrick
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin  53707-7857
(608) 266-1792

*Attorneys for Plaintiff-Appellant*

*Attorneys for Defendants-Appellees*

**2026– BACHMAN LEGAL PRINTING – PHONE (612) 339-9518**

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ..................................................................................1

ARGUMENT ..........................................................................................2

I.  Forest for the Trees, Standards Compel Aggregated
    Review of All Facts  ........................................................................2

II.  WCS Violated Its Own Practices ...............................................4

III.  *Lewis* and Overlap of Retaliation and Discrimination ............................7

IV.  Retaliation, Materially Adverse Harm, and
     Rhonda Kelley's Affidavit.................................................... 10

V.  Three-Step Plan for Termination – Causation, Logic
    Plausibility, and Reasonableness ......................................... 12

VI.  "Much" Means a Great Amount and Employer Liability ...................... 16

CONCLUSION.................................................................................... 18

CERTIFICATE OF COMPLIANCE............................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bounds v. Country Club Hills Sch. Dist. 160,*
  64 F.4th 926 (7th Cir. 2023) .................................................................................. 2

*Fabick, Inc. v. JFTCO, Inc.,*
  944 F.3d 649 (7th Cir. 2019) ................................................................................ 2, 3

*Furry v. United States,*
  712 F.3d 988 (7th Cir. 2013) ................................................................................ 2, 3

*Gates v. Board of Education of Chicago,*
  916 F.3d 631 (7th Cir. 2019) .................................................................. 2, 3, 4, 11, 17

*Lesiv v. Illinois Cent. R.R. Co.,*
  39 F.4th 903 (7th Cir. 2022) .................................................................................. 11

*Lewis v. City of Chicago Police Dep't,*
  590 F.3d 427 (7th Cir. 2009) ................................................................................ 7, 8, 9, 17

*Napier v. Orchard Sch. Found.,*
  137 F.4th 884 (7th Cir.) ......................................................................................... 8, 9

*Ortiz v. Werner Enters., Inc.,*
  834 F.3d 760 (7th Cir. 2016) ................................................................................ 3, 4, 17

*Scaife v. Cook County,*
  49 F.4th 1112 (7th Cir. 2022) ............................................................................... 2, 3, 4

*Velez v. City of Chicago,*
  442 F.3d 1043 (7th Cir. 2006) .............................................................................. 17

*Volovsek v. Wisconsin Dep't of Agr., Trade & Consumer Prot.,*
  344 F.3d 680 (7th Cir. 2003) ................................................................................ 8

*Worth v. Tyer,*
  276 F.3d 249 (7th Cir. 2001) ................................................................................ 2

## **<u>Rules</u>**

Federal Rule of Appellate Procedure 32(a)(5) and (6) ..................................... 19

Federal Rule of Appellate Procedure 32(f) ..................................................... 19

Seventh Circuit Rule 32(b) ............................................................................. 19

Seventh Circuit Rule 32(c) ............................................................................. 19

**INTRODUCTION**

Appellant replies to selected portions of WCS's brief and relies on its opening brief in all other aspects. WCS's brief ignores the *Ortiz* and *Gates* legal standards of the 7th Circuit. WCS asks the Court to ignore facts and the legal standards that compel the analysis of those facts. WCS asks the Court not to see the forest for the trees and analyze as the district court did, carve up and analyze separately.

WCS confuses atypical practices through *Lewis*, and its part in showing pretext and the overlap of discrimination and retaliation claims. WCS asks the Court to ignore and dimmish the affidavit of the Rhonda Kelley as the district court did because it shows retaliation, discrimination, harassment, and animus. WCS presents arguments to sanitize its three-step plan to terminate Ms. Golat and ignore those admissions and actions showing causation and animus. Finally, Ms. Golat addresses WCS's and the district court's shared confusion on the meaning of the words, "much," "mostly," and "many" as they relate to the amount of harassment based on sex and the statements in Ms. Kelley's affidavit.

## ARGUMENT

### I. Forest for the Trees, Standards Compel Aggregated Review of All Facts.

WCS asks the Court to ignore briefed and cited facts in the record, ignore applicable legal standards and standards that compel review of all the facts, and ignore Golat's arguments. (WCS Br. 53.) The Court reviews summary judgment orders *de novo* and provides the appellant favorable review of the record evidence. *Bounds v. Country Club Hills Sch. Dist. 160*, 64 F.4th 926, 929 (7th Cir. 2023) Additionally, the court, not the parties, must determine the standard of review, and therefore, it cannot be waived. *Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001).

WCS states that Golat's argument rests on facts showing WCS violated its own practices that the district did *not* use in its order. (WCS Br. 53.) WCS then reasons that because the district court did not use these facts, this Court should not use those facts – that are dispositive to summary judgment. WCS supports this fallacy by telling the Court it does not have to "comb the record" for facts. (*Id.* quoting *Powell* as used by WCS.) Golat provided citations, no combing needed.

*Ortiz, Fabick, Furry, Scaife,* and *Gates* rely on the entirety of the record, not cherry-picking. Both *Furry* and *Fabrick* provide the error standard; factual determinations are reviewed for clear error and legal conclusions are reviewed

de novo. *Fabick, Inc. v. JFTCO, Inc.*, 944 F.3d 649, 659 (7th Cir. 2019)(citations omitted). *Furry* offers the test for error, if "interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence." *Furry v. United States*, 712 F.3d 988, 992 (7th Cir. 2013)(citations omitted).

Here, Golat presents documents and facts from the record in her opening brief that were ignored by or contradict the district court's determinations. She believed an aggregated analysis view shows implausible and illogical interpretations of facts and ignored evidence contradicts the district court's determinations.

*Ortiz*, *Gates*, and *Scaife* are employment law cases and provide a crucial element missed by the district court: aggregation. *Ortiz* requires the Court to "aggregate the possibilities to find an overall likelihood of discrimination" and that "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 763, 766 (7th Cir. 2016). *Gates* allows for a relentless pattern of lesser harassment to establish harassment. *Gates v. Board of Education of Chicago*, 916 F.3d 631, 641 (7th Cir. 2019).

WCS cites *Scaife* in its brief but fails to analyze the portion that Ms. Golat uses to color the district court's improper treatment of harassment evidence, that courts should not "carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rise to the level

of being severe or pervasive." *Scaife v. Cook County*, 49 F.4th 1112, 1118 (7th Cir. 2022) (citation omitted)(WCS Br. 23, 46)(Golat Br. 31.)

WCS's failure to address aggregation caselaw from Golat's opening brief shows it agrees with the district court's approach to carve up and separately analyze in contrast to *Scaife, Gates,* and *Ortiz.* WCS is silent on these standards for review and analysis that require one to see the forest for the trees. Proper review shows a jury would find for Golat because it will see the harassment and bullying, the initial complaint and medical leave that resulted in WCS's three-step plan to terminate (admissions of liability), and the EEOC complaint that triggered her termination through pretexts.

## II.  WCS Violated Its Own Practices

Golat has briefed the many violations of WCS Human Resources ("HR") practices that were not weighed by the district court.[1] She relies on those arguments but responds to WCS's vacuum argument. WCS stated that Golat "points to no policy" showing WCS normally waits for a police investigation to conclude before disciplining an employee. (WCS Br. 49.) WCS argues that there

---

[1] Termination/no re-hire was atypical (Golat Br. 52, S.A. 19-20), Anderson recusal (Golat Br. 50-51), travel reimbursement discipline then recission (Golat Br. 52), vacuum investigation and suspension for employee file and leading to termination (Golat Br. 53, 56, 61-62), Anderson violation of Wis. S.Ct. Rules regarding "black-eye" and "creepy" body comment (Golat Br. 33,37), salon credit and alleged recording leave and discipline for employee file (Golat Br. 55.)

was no reason to wait for the police investigation because she was not disciplined for anything criminal. (*Id.*)

Golat did point to policy. Frederick, the WCS designee and former Head of HR and current Deputy Director of WCS was asked what WCS did if there was an ongoing criminal investigation and she answered,

> "We would wait until a criminal investigation was concluded, and the results of that investigation could or could not be germane to the person's employment, depending on the nature of the crime."

(Golat Br. 61 citing Ex. H at 44:15-45:1.) Theft or non-theft of an employer's property is germane to one's employment – it determines if you stay employed or are fired and have criminal charges.

Clearly, WCS policy was to wait for a police investigation to conclude. Here, the police were in the midst of an investigation when WCS was put on notice of Golat's EEOC complaint and WCS did not wait for the police report, it suspended her three days after learning of the EEOC complaint. (WCS Br. 10-11.)

WCS knew she did not steal anything. Judge Anderson ordered the police investigation but admitted he did not think she stole anything, this shows causation because of Anderson's direct involvement with the police investigation for theft and its atypical practice because it belies logic for a judge to order the police to investigate something he believed is not true (it could be

considered a false police report). (Golat Br. 54 citing Ex. B Anderson Depo 109:20-25, 110:1-12, 122:7-15.)

Knowing the police report would exonerate her, WCS suspended her for whatever they could, lying, three days after notice of the EEOC complaint (Golat contends this was a pretext to sanitize their retaliation, discussed below). It is illogical and implausible that WCS did not wait for a criminal police investigation that was germane to her employment. The entire pretext/reason for investigating her was suspicion of theft of a vacuum. Anderson approved the police investigation, but nobody bothered to wait for the police report – it defies logic and is implausible, but Golat was still suspended for it and never returned to work after that suspension.

WCS argues that Golat was not suspended for *criminal* behavior or *stealing* the vacuum, therefore they sanitize the police report policy violation. (WCS Br. 49.) This is Monday morning quarterbacking and a thin argument for a blatant policy violation. Importantly, it does not explain why they did not wait for the police report. It simply asks the Court to further buy-in to their pretext. The glaring question is, was WCS interested in determining if she actually stole the vacuum or was WCS interested in finding any pretext to suspend her?

WCS's brief misrepresents exculpatory evidence related to the vacuum. Golat's announcement that she had the vacuum in her office via Zoom or

"intercom," and she called for the boxes to be picked up twice. (Golat Br. 54.) This fact is from WCS's own HR interview of Defendant Judge Barna and Golat's testimony. WCS omitted this fact from its briefed narrative then misrepresented the fact, stating, "…defendants say that no one heard" Golat's announcement. (WCS Br. 9 & 47) That is patently false, Judge Barna is a Defendant, and it is her WCS interview that states Golat announced over the "intercom" that the vacuum was in her office and that Golat called her department (DA's office) twice to have boxes picked up. (Golat Br. 54.)

Golat never returned to work after she was suspended because no one bothered to pick up a vacuum from her office. This happened three days after the EEOC complaint and amid an active police investigation. Her suspension was non-negotiable and non-appealable by Golat – whatever WCS HR says goes. (Golat Br. 14-15 citing Ex. R 94-37 and Ex. LL at 6.) She did not steal the vacuum; the police found it had never left her office. (Golat Br. 62.) As briefed, the district court ignored the police report and stated that the video is not definitive as Golat suggests, she did not suggest it, two professional police officers did. (Golat Br. 62.)

## III.  *Lewis* **and Overlap of Retaliation and Discrimination**

WCS contends no adverse actions took place because the *Lewis* case does not "stand for the proposition" that atypical practices in investigations or policy violations prove pretext. (WCS Br. 45-46 and 53-54.) WCS suggests that there

is no connection between adverse actions and pretexts and no overlap between discrimination and retaliation or shared evidence supporting the two. WCS misreads the district court's application of *Lewis* and overlap.

District court presented *Lewis* thusly, "The court system's decision <u>not to follow the typical practice</u> in Golat's case was an adverse employment action." *Cf. Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 436 (7th Cir. 2009)(emphasis added)(S.A. 19-20.) Golat was not arguing that district court presented *Lewis* incorrectly, she argued that district court did not apply *Lewis* to the many atypical practices argued and in the record.

After a complaint, discrimination and retaliation claims overlap, because of the overlap discrimination and retaliation claims will be considered together. *Volovsek v. Wisconsin Dep't of Agr., Trade & Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003).

The reason for the overlap is logical, atypical practices signify dishonesty or something disingenuous. The 7th Circuit in *Napier* aptly provides reasoning,

> Pretext is [a] lie, specifically a phony reason for some action, not just faulty reasoning or mistaken judgment on the part of the employer.... At the same time, [p]retext does not require that plausible facts presented by the defendant not be true, only that they not be the reason for the employment decision. Said differently, when there is sufficient evidence that an employment action was discriminatory, an employer

cannot sanitize the decision by pointing to a legitimate problem with an employee's performance.

*Napier v. Orchard Sch. Found.,* 137 F.4th 884, 892 (7th Cir.), *cert. denied,* 146 S. Ct. 328, 223 L. Ed. 2d 163 (2025)(citations and quotations omitted.)

Here, WCS's argument against *Lewis* seeks to sanitize every time they went outside normal WCS HR practices, and judicial practices in the case of Judge Anderson's recusal and sexual harassment in the courtroom (from him and others). For example, WCS sanitizes the vacuum suspension by stating that Golat was not suspended for theft but for lying in her interview which had the pretextual purpose of vacuum theft. (WCS Br. 9.) Golat has shown atypical HR practice related to the vacuum suspension and it is discussed above, WCS's excuses were accepted as sanitized behavior by the district court.

We will not reargue every atypical practice as they have been briefed. We emphasize that in contrast to WCS's assertion, case law shows that atypical practices do show pretext. Here, Golat made complaints against her boss, Judge Anderson, and experienced retaliation and discrimination. After Golat elevated her complaint to the EEOC against her employer at large she was suspended three days later and never returned to work.

## IV. Retaliation, Materially Adverse Harm, and Rhonda Kelley's Affidavit

WCS claims Golat cannot find abuse of discretion in the district court's determinations that resulted in its willful ignorance of the Rhonda Kelley affidavit in its entirety. First, district court said Ms. Kelley failed to "explain how they have personal knowledge of these events". (S.A. 2). She did not fail; district court failed to read the affidavit. Ms. Kelley explicitly states in the beginning of her affidavit that she was the Deputy Clerk of Rusk County, she worked in that courthouse daily, and she goes on to cite bases, she "witnessed" or "recalled" etc. (R.94-4 Ex. D at #1-#21)(Golat Br. 29.) A reading of the affidavit shows district court's findings are outside reason, logic, are implausible, and district court likely did not read it in its entirety, or it would have seen the bases for personal knowledge.

WCS states that Ms. Kelley's affidavit was "mostly not admissible," and the district court stated that "…many of the statements in the Kelley affidavit are hearsay or entirely lacking in foundation." (WCS Br. 34, S.A. 9.) Like the district court and WCS's misuse of the word "much" (discussed below), the district court and WCS misuse the words "many" and "mostly" to dismiss Rhonda Kelley's affidavit – their analysis and determination is not plausible.

As briefed, the district court analyzed Ms. Kelley's affidavit and cited two statements out of 21 may be hearsay, then threw the baby out with the

bathwater. (Golat Br. 29-31.) Two out of 21 is not "many" (district court) it is 10%, which is "scant." It certainly isn't "mostly" (WCS) which suggests a value greater than 50%. Excusing the entire affidavit as lacking foundation or as hearsay was not proper, plausible, or logical.

Ms. Kelley's affidavit is material to Golat's case. (R.94-4 Ex. D at #1-21.) *Gates* asks for a showing of a relentless pattern of harassment to establish harassment. *Gates v. Board* at 641. Ms. Kelley's affidavit shows relentless harassment that dated back years and the bullying culture established by Judge Anderson who openly accused her of fraud (faking injury) and openly laughed off Golat's attempt to end the harassment of his assistant. (Sharon Lee). (R.94-4 Ex. D at #1-#21.)

WCS cherrypicked *Lesiv* and did not offer its test for adverse actions, "Still, even for a retaliation claim, the actions must rise above "trivial harms," such as "petty slights or minor annoyances that often take place at work and that all employees experience," which do not qualify as materially adverse." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 912 (7th Cir. 2022)(citation omitted)(WCS Br. 45.)

It is not trivial to be accused of faking an injury while on medical leave. That is an accusation of insurance fraud. It is not trivial to be accused of stealing company property. That is a crime. It is not trivial to be accused of wage theft (travel reimbursement and overtime). It is a crime. It is not trivial

to be accused of causing a judge to recuse himself from a case – it suggests witness tampering (victim impact witness) and purposeful interference with justice and the judiciary, by a court reporter. It is not trivial to have people make jokes about your breasts and creepy comments about your body while your boss laughs. It is not trivial to be called a lesbian by your boss because you drive a Subaru. These are not petty slights or annoyances experienced by all employees; they are actionable.

We only know about the later additional humiliations and culture established by Judge Anderson because of Rhonda Kelley. She was the Deputy Clerk and a fly on the wall; a non-interested party who bravely submitted her affidavit against a judge who thought he "was untouchable" to help right a wrong. (R.94-4 Ex. D at #20.) The district court brushed Ms. Kelley aside because two of her 22 statements referenced may have been hearsay, while the rest are first-hand knowledge and very important to Ms. Golat – not many in Rusk County are willing to take on a judge and court system.

## V. Three-Step Plan for Termination - Causation, Logic, Plausibility, and Reasonableness

WCS states that Golat's retaliation claim fails because, "…she did not show that the protected activity in which she engaged caused the adverse employment actions." (WCS Br. 3.) Golat clearly shows that Judge Boyle and Judge Anderson discussed her termination because of "harassment"

complaints and her medical leave, Judge Anderson was afraid of being sued if they fired her, and WCS admitted to investigating her for discipline after her complaints – this evidence is from Defendants. Causation in employment law cases rarely get admissions like this.

WCS had a three-step plan. Employing logic and plausibility shows a reasonable jury would find that the evidence, communications, decisions, and testimony related to the three-step plan shows animus, causation, and a desire for and execution of adverse actions. WCS, through Judge Boyle, explicitly wanted her terminated, then HR and the DOJ spoke, and Boyle laid out a longer timeline, WCS also admitted to investigating Golat for discipline after her complaints. District court separated and excused these smoking guns by ignoring aggregation, employing contrasting temporal caselaw for causation, carving and separating facts, ignoring facts and accepting WCS's sanitizing narratives. The three-step plan should be recognized for what it is – a continuing explicit plan by those learned in the law to terminate Golat.

Step one, decision to terminate. Chief Judge Boyle clearly stated on July 25, 2019, and August 7, 2019, that she supported termination because of Golat's complaints ("harassment") against Judge Anderson and her medical leave. (Golat Br. 43 citing R.94-31 Ex FF p.1-3.) A reasonable jury could consider this a smoking gun for protected activity being the causation for the

adverse actions that followed, office moved, investigations, accusations, suspension, termination, black-balling.

Step two, timing for termination – a premeditated legal defense. On August 13, 2019, Chief Judge Boyle then offers to extend the timing of their plan, she decides to let things, "play out a bit longer". (Golat Br. 43, 56, 57-58, 63.) A reasonable jury could find that a judge or judges knew the employment laws and temporal considerations then decided to wait because, Judge Anderson was "…<u>concerned he may be sued by Shannon… Caitlin is going to talk to DOJ</u>." "Caitlin" is Defendant Caitlin Frederick. (Golat Br. 41 citing R. 132-1 at 5)(emphasis added.) There is nothing in the record showing that Boyle or WCS decided against termination, only that they wanted things to "play out" longer, they wanted a legal defense, and the district court ignored this premeditation. The record shows WCS and Defendants did indeed continue with their illegal plan – it is one and the same, a continuation.

Step three, "look for discipline."[2] WCS Head of HR and witness designee, Frederick, testified that after Golat made complaints, WCS began "looking at discipline" for her – an admission they were searching for pretexts. (Golat Br. 53 citing R-8 Ex. H 111:1-14.) Golat has briefed many examples of pretext and

---

[2] This third step is not temporal as Frederick and WCS began investigating Golat after her initial complaint and medical leave.

14

violations of HR practice to discipline Golat.[3] For example, HR's barring of travel experts after they found no issue with Golat's travel submissions. (Golat Br. 52-53.) Head of HR Frederick stated that the reason for blocking Golat from the experts was because she "wanted to be sure the matter was being handled properly." (Golat Br. 53 citing 94-5 Ex. E 220:4-17.) In this one example, a reasonable jury could find that barring experts that sided with Golat was not to "be sure it was handled properly" but because WCS wanted complete control for a predetermined outcome. (Golat Br. 52-53.) As such, a reasonable jury could find that the relentless investigations after the decision to terminate her were pretextual on their face and Frederick's statement was an admission to seek pretexts.

Another protected activity resulting in adverse action is Golat's contacting a potential EEOC witness and that being used as a reason for Judge Anderson's recusal and discipline and black balling of Golat. (Golat Br. 47-51.) District court adopted WCS's narrative and grossly mistreated Golat's protected activity of contacting a potential witness by endorsing termination for that protected behavior. District court did not weigh the illogical and

---

[3] She has briefed the suspect sources of "complaints", Judge Anderson's friend passed along hearsay from a beauty salon, incoming Judge Barna and her department that were being lobbied by Judge Boyle to not hire Golat, Judge Anderson was the source for the police investigation for the vacuum and travel reimbursement audit.

implausible facts that Judge Anderson and WCS did no investigation to determine if the witness tampering accusation was true, instead it sided with WCS's intended result: Judge Anderson's recusal and blame on Golat.

If the district court's finding is upheld, it will have a chilling effect on contacting EEOC witnesses – a new test will need to be determined to discern what witnesses can be contacted and which cant. (Golat Br. 67.) Maybe the result will offer judges complete immunity for their behavior as long as they can manipulate a narrative for defenses, even when the supervisors and employer explicitly lay out that plan – as they have here.

## VI. "Much" Means a Great Amount & Employer Liability

WCS lists the 11 hostile work environment events that the district court considered and states "much of the conduct and comments" were not based on sex, the district court agreed and parroted this argument in its order, "Defendants contend that much of this conduct was unrelated to Golat's sex…The court agrees." (WCS Br. 18-19 & S.A. 11.) A reading of the events offered by the district court show that only three of the 11 are not clearly sex based, but eight are clearly sex based. This means that 72% were related to sex and 28% weren't. Both the district court and WCS use the word "much," but a simple reading and comparison shows that is incorrect. 72% did have to do with Golat's sex – this is an illogical and implausible finding, because "much" means

16

a large quantity or to a great extent. Roughly one-fourth is not a great quantity.

WCS does no analysis of *Ortiz*, *Gates* or *Lewis* but offers a portion from *Velez*, "[A] successful hostile work environment claim requires a plaintiff to demonstrate that the harassment was *based on* his or *her protected status* and that the employer was negligent in not discovering or remedying it." *Velez v. City of Chicago*, 442 F.3d 1043, 1048 (7th Cir. 2006)(emphasis in original)(WCS Br. 20.) Here, the claim was based on sex, as discussed above and the employer explicitly made plans to terminate her for "harassment" complaints. It did the opposite of remediation – deciding to terminate for Golat's "harassment" complaints and medical leave.

Importantly, WCS omitted the following from *Velez*,

> An employer is liable for a hostile work environment claim if the plaintiff's supervisor created the hostile work environment, or if a co-worker created the hostile work environment and the employer was "negligent either in discovering or remedying the harassment."

*Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006)(citation omitted). Here, Golat's supervisor created the hostile work environment along with a co-worker (Anderson's assistant, Sharon Lee), to the point where people gathered at the window to disparage Golat and an attorney and bailiff sexually harassed her in the courtroom to the delight of Judge Anderson. (Golat Br. 6-7.) WCS

17

and Judge Anderson had duties to remedy, but Anderson doubled down on the harassment, to the point that he violated judicial practice. (Golat Br. 6-7.)

## CONCLUSION

This Court should provide a favorable outcome for Ms. Golat by reversing the district court's judgment and rendering summary judgment in favor of Ms. Golat or another outcome favoring Ms. Golat.

Respectfully submitted,

**HELLMUTH & JOHNSON, PLLC**

Dated: March 13, 2026            By: */s/ Adam J. Almen*
                                      Adam J. Almen, ID #0397157
                                      8050 West 78th Street
                                      Edina, Minnesota 55439
                                      Telephone: (952) 941-4005
                                      E-Mail:  aalmen@hjlawfirm.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Seventh Circuit Rule 32(c) because it contains 4,016 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6), and Seventh Circuit Rule 32(b), because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

**HELLMUTH & JOHNSON, PLLC**

Dated: March 13, 2026
By: */s/ Adam J. Almen*
Adam J. Almen, ID #0397157
8050 West 78th Street
Edina, Minnesota 55439
Telephone: (952) 941-4005
E-Mail:  aalmen@hjlawfirm.com

**ATTORNEYS FOR APPELLANT**